## Case No. 13,911.

**THOMAS et al. v. SHOE MACHINERY MANUF'G CO. et al.**

[3 Ban. & A. 557;[1] 16 O. G. 541.]

Circuit Court, D. Massachusetts. Oct. 9, 1878.

PATENTS—REISSUE—EFFECT OF—NEW FEATURES—MATERIAL INTERPOLATIONS—PRESUMPTIONS.

1. Reissued patents are presumed to be for the same invention as the original, and will only be adjudged void, because for a different invention, where it clearly appears that the reissue contains some new feature, of a material character, not described, suggested, or substantially indicated in the specification, drawings or patent office model of the original.

2. The granting of a reissued patent closes all inquiry into the existence of inadvertence, accident or mistake.

3. Neither reissued nor extended patents can be attacked by an infringer in a suit against him for damages or profits, on the ground that the letters patent were procured by fraud in prosecuting the application for the same before the commissioner.

4. Where the commissioner accepts a surrender and grants a reissue, his decision is final and decisive, in a suit for infringement, unless it appears that he has exceeded his authority, and that there is such a repugnancy between the old and the new patent, that it must be held as a matter of construction that the new patent is not for the same invention as the original.

[Cited in American Diamond Rock Boring Co. v. Sheldon, Case No. 296.]

5. A patentee is not allowed to interpolate new features into a reissue which are not described, suggested or substantially indicated in the specification, drawings or patent office model of the original patent.

[Cited in Dederick v. Cassell, 9 Fed. 307.]

6. Where material interpolations are made in a reissue, they show that the commissioner exceeded his jurisdiction, and in such case it clearly becomes the duty of the court to declare the reissued patent void.

7. Inventions secured by letters patent are presumed to be new and valid, until the contrary is shown.

[This was a bill in equity by Samuel E. Thomas and others against the Shoe Machinery Manufacturing Company and others to restrain the infringement of reissued letters patent No. 6,550, granted to A. F. Johnson July 29, 1875. The original letters patent No. 42,-292 was granted to Johnson April 12, 1864.]

Edmund Burke and John S. Abbott, for complainants.

Smith & Bates and W. W. Swan, for defendants.

CLIFFORD, Circuit Justice. Reissued patents are presumed to be for the same invention as the original, and will only be adjudged to be void, because for a different invention, where it clearly appears that the reissue contains some new feature of a material character not described, suggested nor substantially indicated in the specification, drawings or patent office model.

Improvements in sewing-machines were

[1] [Reported by Hubert A. Banning. Esq., and Henry Arden, Esq., and here reprinted by permission.]

made by Albert F. Johnson, for which letters patent were granted him in due form. Those improvements relate to an improved mechanism for the operation of the awl and needle in such a machine, and consist in the employment of a driving-shaft below the supporting-plate for the operation of the needle, and a shaft above the plate for the operation of the awl, the two shafts being connected by means of suitable intermediate mechanism. Rocking levers, it seems, were formerly used, and the patentee states that the shaft is much better than the old device, as the whole strain on the awl, when piercing the material, is conducted to the gooseneck of the machine, instead of the awl, which is sufficiently strong to prevent its breaking or bending when the awl enters the material. Experience showed that the specification was in some respects defective, in consequence of which the patent was surrendered and reissued in the form described in the bill of complaint.

Service was made, and the respondents appeared and filed an answer setting up the defences following: (1) That the original patent is still in force, and that one of the respondents is an owner of an undivided share of the original patent, and has the right and liberty of making, using and vending the invention. (2) That the reissued patent is not for the same invention as the original patent. (3) That the invention is not new or useful, nor has it been of any advantage to the complainants or the public. (4) That the machine described in the reissued patent is not new, and had been previously described in the several patents mentioned in the second amendment to the answer. (5) That they have not made, used or vended the invention described and secured in the reissued patent, nor in any way violated the rights of the complainants, or deprived them of any gains and profits.

1. Authority to accept the surrender of an original patent and to grant a reissue is conferred upon the commissioner, and, in a case arising under the patent law then in force, the supreme court, more than thirty years ago, decided that where an act was to be done or a patent granted upon proofs to be had before a public officer upon which he was to decide, the fact that such officer had done the act or granted the patent was prima facie evidence that the proofs had been regularly made and that they were satisfactory, even though the patent did not contain any recitals that the prerequisites to the grant had been fulfilled; and such continued to be the rule until the question came up under a later act, when the supreme court held that the granting of a reissued patent closed all inquiry into the existence of inadvertence, accident or mistake, and left open only the question of fraud for the jury. Railroad Co. v. Stimpson, 14 Pet. [39 U. S.] 458; Stimpson v. Railroad Co., 4 How. [45 U. S.] 384. Since that time it

has been definitely settled, that neither reissued nor extended patents can be abrogated by an infringer, in a suit against him for damages or profits, upon the ground that the letters patent were procured by fraud in prosecuting the application for the same before the commissioner. Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 797. Where the commissioner accepts a surrender of an original patent and grants a new patent, his decision in the premises, in a suit for infringement, is final and decisive, and is not re-examinable in such a suit in the circuit court, unless it is apparent upon the face of the patent that he has exceeded his authority, and that there is such a repugnancy between the old and the new patents, that it must be held as matter of legal construction that the new patent is not for the same invention as that embraced and secured in the original. Seymour v. Osborne, 11 Wall. [78 U. S.] 543. Both the original and the reissued patents were granted in the name of the same patentee, and it is settled law that the suit in such a case must be brought in the name of the patentee or his assignee. Goodyear v. Rubber Co. [Case No. 5,583]. Suppose the rule was otherwise, still it is clear, from the evidence in the case, that the legal title to the invention was in the patentee, both at the date of the original and of the reissued patent; but, in view of the circumstances, it is not deemed necessary to reproduce the details of the evidence.

2. Power to accept the surrender of an original patent and to grant a new one in its place is conferred upon the commissioner, but the act of congress giving that power expressly requires that the reissued patent must be for the same invention as the original. Patents may be surrendered to be corrected, and the power to surrender implies that the specification may be corrected to the extent necessary to cure the defects, and to supply the deficiencies, to render the patent operative and valid; but the patentee may not interpolate new features not described, suggested or substantially indicated either in the specification, drawings or patent office model. Interpolations of the kind, if material, show that the commissioner exceeded his jurisdiction, and, where that is done, it clearly becomes the duty of the court to declare the patent void. Courts of justice will avoid such a conclusion, if they can reasonably do so by a proper application of the maxim that patents are to receive a liberal construction, and, if practicable, be so interpreted as to uphold and not destroy the right of the inventor. Turrill v. Railroad Co., 1 Wall. [68 U. S.] 491; Ames v. Howard [Case No. 326]; Blanchard v. Sprague [Id. 1,517]; Milligan & Higgins Glue Co. v. Upton [Id. 9,607]. Slight changes will not sustain such a defence, nor will the court in any case declare the patent void on that account, if, by the true construction of the two instruments, the invention secured by

the two instruments is not substantially different from that embodied in the original patent. Inquiries in such a case are restricted to a comparison of the terms and import of the two patents in view of the drawings and patent office model. If from these it results that the invention claimed in the reissue is not substantially different from the one described, suggested or indicated in the specification or drawings of the original patent or patent office model, the reissued patent must be held valid, as all other alterations and amendments plainly fall within the intent and purpose of the provision in the act of congress which allows a surrender and reissue; or, in other words, if the reissued patent does not, upon the face of the instrument, embrace anything not substantially described, suggested or indicated in the specifications, drawings or model of the original, the defence that the reissued patent is not for the same invention as the original must be overruled. Apply that rule to the case under consideration, and the court is of the opinion that the second defence is not sustained. Alterations and new explanations are made in the specification, but they are not of a nature to change the character of the original invention when tested by that rule. On comparing the specification and drawings of the original patent with those of the reissued patent, it is found that the drawings are exactly the same, and the court is clearly of the opinion that there is no such change in the descriptive words of the specification as will support the second defence.

3. Inventions secured by letters patent are presumed to be new and useful until the contrary is shown, and, in the absence of countervailing proof, that prima facie presumption is sufficient to entitle the complainant to a decree in a suit for infringement. Proofs upon that subject were introduced on both sides, and the court is of the opinion that those introduced by the complainants fully sustain the affirmative of the issue.

4. Before proceeding to the next defence, it becomes necessary to make some further reference to the patented specification, in order to understand what the difficulties were which the patentee had to encounter in his experiments. Machines for sewing waxed thread were in existence prior to the invention of the patentee, but most or all of them were only capable of using a single thread for the tambour stitch, it having been found impossible to form a seam by a double-thread or lock-stitch on heavy goods with a waxed or tarred thread.

Experience showed that the lock-stitch was the best, but it could not be made with a waxed thread in leather and other hard fabrics by the ordinary arrangement of devices found in machines then in use, for several reasons: First. Eye-pointed needles cannot conveniently be used on account of chafing the thread in the eye, as is more fully ex-

plained in the specification. Second. Because a waxed or tarred thread would stick in the longitudinal groove, and prevent the formation of a loop for the passage of a shuttle. Third. Because such a needle, in sewing thick goods, such as thorough-braces, would have to be so long that it would be inoperative.

Attempts, as the patentee states, have been made to obviate the difficulties in the use of the eye-pointed needle by employing an awl for puncturing the leather in combination with a hooked needle which pulls the thread down through the fabric; but these improvements will only produce a single-thread stitch, and that with difficulty, as it causes so much friction as to render it extremely difficult to use the shuttle.

Experiments were made to overcome those difficulties, and they showed that the following conditions in the machinery were desirable in order to produce a double or lock-stitch in leather or other fabrics that are to be united with a waxed thread: (1) That a substitute for an eye-pointed needle was required which would be free from the defects of the eye of the eye-pointed device. (2) That a shuttle or other device for interlocking one thread with another should be so combined with the other devices as to pass through the loop of the needle-thread without strain or friction. (3) That the tightening of the stitch should be performed, when the needle or other instrument is not in the goods, with the waxed thread. (4) That the thread, while it is being passed down through the fabric, should be slack, or without being subject to tension, during the whole time of its being so passed.

Pursuant to these suggestions, the patentee, when making the lock-stitch, employs an open-eyed hooked needle, combined with the shuttle shown in the drawings, and he also employs an apparatus called "take-up" in such a manner that while the thread is being conveyed through the fabric it is slack and subject to no tension. Detailed description is then given of every device in the sewing apparatus, and of the function which each performs, and of their mode of operation, but, in conclusion, the patentee states that the same result may be obtained by using the hook or crochet needle as the piercing instrument, and by binding the fabric by that or any other devices.

Six claims are appended to the descriptive portion of the specification, and the charge in the bill of complaint is that the respondents infringe the fifth and sixth, which are as follows: "(5) In combination with a rocker-shaft above the work-plate, the awl-bar and thread-guide, as and for the purpose set forth. (6) A shaft arranged above the work-plate, for the operation of the awl in combination with a shaft below the table, for the operation of the needle, and suitable connecting mechanism, as and for the purpose set forth."

Six or more patents were introduced in evidence by the respondents as comprising the patented invention of the complainants. These were all carefully examined and described by the expert witness called and examined a second time. In conclusion, he states, in very explicit terms, that he does not find in any of those exhibits a rock-shaft located in the goose-neck of the machine for the operation of an awl and thread-guide, nor that any of them employ a shaft below the table for the operation of a needle, and a shaft above the table for the operation of an awl, and a connecting mechanism, which he regards as the essence of the fifth and sixth claims of the reissued patent described in the bill of complaint.

Expert witnesses were also examined by the respondents, whose testimony differs from that referred to; but the court is of the opinion that the views expressed by the complainants' principal expert witness are correct, and that none of the patents in question are of a character to supersede the complainants' reissued patent.

5. Extended discussion of the question of infringement will be unnecessary, as the parties have agreed, in writing, that the respondents made, or participated in the making of, machines like the exhibit described in that specification. The court has already decided in the preceding case that such machines do infringe the mechanism described in the reissued specification. Nothing is exhibited in the present record to take the case out of the rule there laid down, and the court is of the opinion that the charge of infringement is fully proved.

Decree for complainants for an account and for an injunction, with costs.